In the Matter of the ESTATE of Dale Eugene JOHNSON, Deceased.

Norma JOHNSON, Appellant,

v.

Beverly Sue JOHNSON, Individually and as Administrator of the Estate of Dale Eugene Johnson, Deceased, Appellee.

No. 55884.

Supreme Court of Iowa.

Dec. 19, 1973.

Charles F. Knudson, of Marcus, for appellant.

Miller, Miller & Miller, Cherokee, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

This appeal requires us to resolve a controversy between Beverly Sue Johnson, a surviving spouse, and Norma Johnson, decedent's mother, over disposition of a settlement in a wrongful death action. The surviving spouse as administrator of the estate filed a petition in the probate proceeding for declaratory judgment, contending the total recovery was exempt property and belonged to her. The trial court so held, and we reverse.

In the proceeding below most of the facts were stipulated. The decedent, age 22, died intestate as a result of a truck accident on June 23, 1971. He left surviving him his spouse, and as sole heir, his mother. The spouse as administrator sued a third-party corporation to recover "for loss of accumulations to decedent's estate and to recover the value of his services and support as the spouse of Beverly Sue Johnson." The claim was settled for a net of $35,000.

Decedent, recently discharged from the Marine Corps, had accumulated very little. He earned an average salary as a truck driver, and had inherited an undivided interest in real estate.

It was further stipulated the surviving spouse became entitled to and had received payments under the Iowa Workmen's Compensation Act. Following the death claim settlement the compensation carrier asserted its subrogation rights. She refunded $3072 in payments already received, and future weekly compensation totaling $14,728 was terminated.

Trial court determined the wrongful death recovery was exempt property which passed to the surviving spouse pursuant to § 633.212(2), The Code. Nonetheless, it further determined that even if the recovery was not exempt, a reasonable division of the proceeds would be 80 percent to the surviving spouse for loss of support and 20 percent to the estate as loss of accumulations to decedent's estate.

The mother contends all of the wrongful death recovery must go into the estate by virtue of the plain language of § 633.336, The Code.

> "When a wrongful act produces death, damages recovered therefor *shall be disposed of as personal property belonging to the estate of the deceased,* but if the deceased leaves a spouse, child, or parent, it shall not be liable for the payment of debts of the estate, except debts and charges of the first, second, third and fifth classes." (Emphasis supplied.)

As "personal property belonging to the estate" the recovery, she asserts, is distributable to the surviving spouse and to her under the applicable provisions of § 633.-212 and § 633.219, The Code.

The surviving spouse adroitly and forcefully argues a proper construction of several related statutes sustains the district court decision. First, she points out we have interpreted § 611.20, The Code ("All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same") as a survival statute permitting the personal

representative to sue for wrongful death damages. Because the administrator brings the action under this survival statute, decedent himself must have owned the claim for his wrongful death at the very moment of his demise. Carrying the resurrection hypothesis to its conclusion, the surviving spouse claims the proceeds of the wrongful death recovery thus passed to her as " * * * personal property that, at the time of death, was in the hands of the decedent as the head of a family, exempt from execution." Section 633.212(2), The Code. It draws its character as exempt property, she contends, from the second clause in § 633.336, quoted above, "it shall not be liable for the payment of debts of the estate, except * * *."

■ I. A year after the district court decree was entered in this cause, we filed Egan v. Naylor, 208 N.W.2d 915 (Iowa 1973). While the point at issue was not identical, we necessarily had to construe the same statutory provisions. What we there said, 208 N.W.2d at 918, is dispositive of this case:

"We believe a right of action which survives a decedent is created by § 611.-20; the person who may bring it is designated by § 611.22; the measure of recovery as to a spouse and parent is fixed by § 613.15; and the distribution of damages recovered is determined by § 633.336. * * *

" * * * Since wrongful death damages are distributed like personal property in the estate, beneficiaries other than the spouse and children may receive substantial benefit from a recovery where the decedent dies testate. * * * It is anomalous that our statutes confer the right to recover for loss of services and support of a deceased spouse and parent on the decedent's estate rather than on those who incurred the loss. Since the question is legislative we are unable to fashion a judicial remedy."

Had the Egan decision been available to these litigants and trial court, this appeal might not have surfaced to highlight the inequitable operation of the controlling statutes.

In addition to Egan our conclusion is buttressed by Judge Stuart's memorandum decision in Lang v. United States, 356 F. Supp. 546 (S.D.Iowa 1973). Lang holds the amount of money recovered in Iowa for wrongful death is not includable in the decedent's estate for federal estate tax purposes. In arriving at that result, the Lang decision relies on the following quotation from Connecticut Bank and Trust Company v. United States, 465 F.2d 760, 763 (2 Cir. 1972):

"Simple logic mandates the conclusion that an action for wrongful death cannot exist until a decedent has died, at which point, he is no longer a person capable of owning any property interests. The Government's reply to this is that at the very instant of death the right of action arose which the decedent was then capable of owning at death. The only authorities cited for this position, however, are cases where *preexisting* property interests were *valued* as of the instant of death, but valuation at time of death of prior existing interests is a far different concern from that in this case where the property interest itself has sprung from the fact that the death has taken place."

This sound reasoning, applied here, precludes the concept that the proceeds of a wrongful death action pass to the surviving spouse as exempt " * * * personal property that, at the time of death, was in the hands of the decedent as the head of a family * * *." Section 633.212(2), The Code.

■ II. What we have already said resolves the further issue whether the court may allocate the recovery between the estate and the surviving spouse despite the plain language of § 633.336 that such proceeds "shall be disposed of as personal property belonging to the estate of the deceased." It is obvious the statute may lead to inequitable, harsh and even bizarre re-

sults. See Egan v. Naylor, supra; 48 Iowa L.Rev. 666, 682 (1963); 15 Drake L. Rev. 107, 110 (1966). But where the language of a statute is plain and unambiguous, and the meaning clear and unmistakable, there is no room for construction. Consolidated Freightways Corp. of Del. v. Nicholas, 258 Iowa 115, 137 N.W.2d 900 (1965).

In its 1965 amendment to § 613.15, The Code, the legislature wisely recognized wrongful death damages should be measured not merely by what decedent might have accumulated had he lived out a normal life expectancy, but also by the loss of decedent's anticipated lifetime contributions, in terms of the value of his or her services and support as spouse or parent or both. Regular Session of the 61st General Assembly, Chapter 427, Section 1.

■ The amendment's effect was to engraft on the Iowa law of damages for wrongful death the concept of compensation to dependents contained in Lord Campbell's Act. Unfortunately the Iowa legislation omitted the following language which in Lord Campbell's Act insured the recovery would be received by those damaged:

"II. And be it enacted, That every such Action shall be for the Benefit of the Wife, Husband, Parent, and Child of the Person whose Death shall have been so caused, and shall be brought by and in the name of the Executor or Administrator of the Person deceased; and in every such Action the Jury may give such Damages as they may think proportioned to the Injury resulting from such Death to the Parties respectively for whom and for whose Benefit such Action shall be brought; and the Amount so recovered, after deducting the Cost not recovered from the Defendant, shall be divided amongst the beforementioned Parties in such Shares as the Jury by their Verdict shall find and direct." —9 & 10 Vict. ch. 93.

Unquestionably by statutory amendment the court or jury could be empowered to determine a proper allocation of damages between the estate and those suffering a loss of decedent's services and support. But in the face of a statute (§ 633.336) which dictates the result shall be left to the whimsical application of intestacy laws or the unintended result of decedent's will, this court is powerless to hold that the damages shall be paid to those whose loss provided the measurement for the amount of damages awarded.

We reverse and remand for further proceedings in conformance herewith.

Reversed and remanded.